```
 1                 UNITED STATES DISTRICT COURT

 2               SOUTHERN DISTRICT OF CALIFORNIA

 3                          --oOo--

 4  GARRABRANTS,                 ) Case No. 19CV1570-H-WVG
                                 )
 5          Plaintiff,           ) San Diego, California
                                 )
 6      vs.                      ) Monday,
                                 ) October 28, 2019
 7  FINANCIAL INDUSTRY REGULATORY ) 11: 30 a.m.
    AUTHORITY,                   )
 8                               )
            Defendant.           )
 9  _____ )

10

11     TRANSCRIPT OF IN-CHAMBERS TELEPHONIC MOTION HEARING
              BEFORE THE HONORABLE MARILYN L. HUFF
12               UNITED STATES DISTRICT JUDGE

13  APPEARANCES:

14  For the Plaintiff:          MADALYN A. MACARR, ESQ.
                                ANDRE J. CRONTHALL, ESQ.
15                              Sheppard, Mulling, Richter
                                 & Hampton, LLP
16                              333 South Hope Street
                                Forty-Third Floor
17                              Los Angeles, California 90071
                                (213) 620-1780
18

19  For the Defendant:          LORI L. WERDERITCH, ESQ.
                                Greenberg, Glusker, Fields
20                               Claman & Machtinger, LLP
                                1900 Avenue of the Stars
21                              Twenty-First floor
                                Los Angeles, California 90067
22                              (310) 553-3610

23

24

25  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.
```

*Echo Reporting, Inc.*

ii

1  APPEARANCES:  (Cont'd.)

2  For Scott Reynolds:          ADAM FORD, ESQ.

3  Transcript Ordered by:       DAVID BERGER, ESQ.

4

5  Court Recorder:              Lynnette Lawrence
                              United States District Court
                              333 West Broadway
6                             San Diego, California 92101

7  Transcriber:                 Tara Jauregui
                              Echo Reporting, Inc.
8                             2160 Fletcher Parkway
                            Suite 209
9                             El Cajon, California 92020
                            (858) 453-7590
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

1   SAN DIEGO, CALIFORNIA  MONDAY, OCTOBER 28, 2019  11:30 A.M.

2                             --oOo--

3        (Call to order of the Court.)

4            THE CLERK:  Calling matter six on calendar,

5   19CV1570, Garrabrants versus Financial Industry Regulatory

6   Authority for a telephonic motion hearing.

7            THE COURT:  Thank you.

8            Could I have the appearances, first by the parties

9   in the case from Garrabrants and FINRA.

10           MS. MACARR (Telephonic):  Good morning, your

11   Honor.  This is Madalyn MaCarr and Andre Cronthall from

12   Sheppard Mullin on behalf of Mr. Garrabrants.

13           THE COURT:  Thank you.

14           And for FINRA?

15           MS. WERDERITCH (Telephonic):  Good morning, your

16   Honor.  Lori Werderitch of Greenberg Glusker on telephonic

17   for FINRA.

18           THE COURT:  Because this action seeks to enjoin an

19   arbitration that's been ordered by a Federal Judge in

20   Southern Florida, the Court invited Reynolds, who is a party

21   to the federal action in Southern Florida, to respond or

22   file a brief.  They are technically not a party.  They have

23   filed a separate motion, but not in accordance with our

24   Local Rules, to dismiss the case for lack of a necessary

25   party.

2

1          As a technical matter, counsel for O'Bryan (sic)
2  -- counsel for Mr. Reynolds, should probably file a pro hac
3  vice application, and we can take care of that later.
4          MR. FORD (Telephonic):  Yes, your Honor.  This is
5  Adam Ford appearing on behalf of non-party, Scott Reynolds.
6          THE COURT:  Yes.
7          MR. FORD:  Just to be clear, your Honor, because
8  you did reference our earlier filing, where we had put in a
9  motion to dismiss, but then after your Honor issued the
10 order denying that without prejudice, we then refiled
11 another motion, which was simply to -- in opposition to the
12 preliminary injunction without seeking to have the case
13 dismissed.  Which I believe -- certainly we hoped was in
14 compliance with the Local Rules and your Honor's order.
15         THE COURT:  Yes.  It's just that if you are not a
16 -- if you're not admitted to practice in Federal Court in
17 Southern District of California, then you have to file for
18 pro hac vice.
19         MR. FORD:  Yes, of course, your Honor.  And we're
20 happy to do that.  I think just so the record is clear, if I
21 remember when the case first started and we were contacted
22 by your Honor's chambers, I believe we were given permission
23 to sort of just file a letter without going through that
24 formal process.  I think there may have been an
25 understanding, this may have been a shorter matter.  Which

3

1   is why we did not file for pro hac earlier.

2           THE COURT:  I have no problem because it was the

3   Court that invited Reynolds to take a position so that our

4   record would be more clear, but technically since you are

5   filing documents, you should also file for pro hac vice.

6           MR. FORD:  Sure, we're happy to do that, your

7   Honor.  Thank you.

8           THE COURT:  And the Court would also waive the

9   requirement for local counsel.

10          MR. FORD:  Thank you very much.

11          THE COURT:  All right.  So now, before the Court

12  is a motion for preliminary injunction, brought by Plaintiff

13  Garrabrants.  He seeks to enjoin FINRA from compelling him

14  to arbitrate certain counterclaims brought by Scott Reynolds

15  before FINRA in the FINRA arbitration, Spartan Securities

16  Group Limited versus Reynolds versus Axos Clearing, LLC.

17          So we do have the federal court ordering this case

18  to arbitration.  Garrabrants was not a party to that federal

19  court action in Florida, but Axos Clearing was a party to

20  that and in that action, Garrabrants signed a declaration in

21  support of a -- an action by the court where he represented,

22  as Chief Executive Officer of Axos Financial, has authority

23  to make the verification on behalf of Plaintiff, Axos

24  Clearing.

25          So I'll first ask Plaintiff, who has the burden of

4

1  showing success on the merits, to then make your argument

2  and then we'll hear from FINRA and then we'll hear from

3  Reynolds.

4          MS. MACARR:  Thank you, your Honor.  This is

5  Madalyn MaCarr on behalf of Mr. Garrabrants.

6          For months now, FINRA has been attempting to

7  exercise jurisdiction over Mr. Garrabrants in the FINRA

8  arbitration, despite the fact that it lacks jurisdiction

9  over Mr. Garrabrants, who is not a FINRA member, not an

10  associated person of a FINRA member, and over a dispute

11  which does not arise out of or relate to FINRA business

12  activities.  Rather, it's a separate tort claim, brought by

13  Reynolds -- Mr. Reynolds -- against Mr. Garrabrants as an

14  individual, and in his individual capacity.

15          Mr. Garrabrants is also a California resident who

16  has no dealings whatsoever with Florida.  A fact that

17  neither FINRA nor Reynolds do or can dispute.

18          In terms of his membership in FINRA.  It seems

19  like the parties are all in agreement that it boils down to

20  whether Mr. Garrabrants is a FINRA member or an associated

21  person, such that you would fall within FINRA's mandatory

22  arbitration rule.  There's no dispute that he's not a

23  member.  So the question turns to whether he qualifies as an

24  associated person under the specific FINRA rule, 13200 § B

25  and also § U, which defines very explicitly what's required

5

1 to qualify as an associated person.

2          Sorry, just one moment.  To qualify as an

3 associated person, not only would Mr. Garrabrants have to

4 directly or indirectly control a member, which here would be

5 Axos Clearing, but to qualify under that prong of the rule,

6 you would also need to be, in his individual capacity,

7 engaged in investment banking or the securities business.

8 He is not.  He declares to the fact that he is not, and

9 neither Mr. Reynolds or Mr. Finra (sic) -- nor FINRA -- have

10 provided any evidence that Mr. Garrabrants is engaged in the

11 investment banking or securities business.

12          He -- it's undisputed that Mr. Garrabrants is not

13 an officer of Axos Clearing.  In fact, he holds no position

14 whatsoever with Axos Clearing.  There's no dispute that his

15 involvement in the negotiation of a separate settlement

16 agreement, which is separate and apart from the underlying

17 dispute between Axos Clearing and Mr. Reynolds, was in his

18 role of CEO of Axos Financial, and in order to protect Axos

19 Financial's investment in Axos Clearing, a subsidiary four

20 steps removed from non-FINRA member, Axos Financial.

21          In terms of any evidence submitted to contradict

22 these facts that he's not a -- Mr. Garrabrants is not an

23 associated person, as your Honor pointed out, the only thing

24 submitted by Mr. Reynolds to even try to show some level of

25 control, is a single verification that was signed, and as

6

1  the signature block reflects, on behalf of Axos Financial,

2  Inc. and not Axos Clearing.  And the verification on its

3  face goes only as far as saying that Mr. Garrabrants has the

4  authority to make that verification.  It does not speak to

5  his authority to control in any way the business of Axos --

6  of Axos Clearing, the securities business of Axos Clearing,

7  any of the activities that are at issue in the dispute

8  between Axos Clearing and Mr. Reynolds, or even the

9  settlement agreement.

10          Florida rules require certain motions to be

11  verified, and as with any entity party, would need to

12  designate some individual and that verification would have

13  to recite the boiler plate language that "I have the

14  authority to make this verification."  That verification,

15  which is the only piece of evidence submitted by Mr.

16  Reynolds, simply just does not rise to the level of showing

17  any sort of control.  Not to mention the deficiencies on all

18  of the other prongs of showing that Mr. Garrabrants is an

19  associated person.

20          In addition to Mr. Garrabrants's non-status of an

21  associated person, the FINRA rule also only requires

22  mandatory arbitration of industry-related disputes arising

23  from the business activities.

24          So, for example, if there was a car accident, even

25  between two FINRA members, even if they were driving to a

7

1  business function, that wouldn't automatically transform the

2  nature of the dispute to one that the FINRA panel is better

3  suited than a court to address the legal issues, affirmative

4  defenses and legal theories going towards the parties

5  potential liability.

6            Similarly here, there are no allegations against

7  Mr. Garrabrants relating to the actual underlying business

8  dispute between Axos Clearing and Mr. Reynolds.  Rather,

9  it's a tort claim trying to go towards the enforceability of

10  a separate agreement, to which Spartan, the FINRA member, is

11  not a party.

12            And so all of the --

13            THE COURT:  On that -- could I interrupt there?

14  On that issue --

15            MS. MACARR:  Yes.

16            THE COURT:  -- wasn't that litigated in the

17  Federal Court in Florida?  And didn't you make the argument

18  that this counterclaim is -- or on the issue of the breach

19  of the settlement, that this is not subject to FINRA

20  arbitration, but the court concluded that it was all wrapped

21  up together and ordered the entire matter to be arbitrated?

22            MS. MACARR:  Yes, your Honor.  So we did raise

23  that issue in the Florida action, to which as you previously

24  noted, Mr. Garrabrants was not a party.  It was a slightly

25  different issue in that it was for breach of the settlement

*Echo Reporting, Inc.*

8

1  agreement and Axos Clearing has appealed that order

2  compelling arbitration as to the settlement agreement, and

3  we'll be filing our appeal very soon on that issue.

4          But as it relates to Mr. Garrabrants, you know,

5  regardless if -- an individual cannot be compelled to

6  arbitrate absent his agreement.  And so regardless of what

7  the court found, with respect to Axos Clearing's affirmative

8  claim for breach of settlement agreement, the dispute here

9  -- the sole dispute here, which is Mr. Reynold's tort claim

10 against Mr. Garrabrants, I don't think that necessarily

11 falls within the court's order.

12         THE COURT:  Can you raise that both with the court

13 in Florida and then also in the arbitration?  Can't you then

14 argue that it's not really proper -- after you gave the

15 facts, it's not really properly within the FINRA rules?

16         MS. MACARR:  Well at this point, the Florida

17 action -- the court has closed that case and it's up on

18 appeal.  And also Mr. Garrabrants was not a party to that

19 and also is not subject to jurisdiction in Florida, whether

20 in court or arbitration.  So in terms of raising that with

21 that court, with respect to Mr. Garrabrants, the reason we

22 filed here before your Honor, is because this is where Mr.

23 -- this is the Court that has jurisdiction over Mr.

24 Garrabrants, and so we feel that this Court is the proper

25 one to make that ruling regarding California resident, Mr.

9

1  Garrabrants.

2         THE COURT:  And are you representing Axos Clearing

3  in the appeal?

4         MS. MACARR:  We are.

5         THE COURT:  Okay.  All right, thank you.  You may

6  continue.

7         MS. MACARR:  Thank you, your Honor.

8         And so really -- I mean it boils down to, kind of

9  the undeniable fact that he's not an associated person,

10  there's no evidence.  Although Mr. Reynolds revised -- or

11  renewed submission has these assertions that Garrabrants

12  explicitly identified himself as speaking on behalf of Axos

13  Clearing, or was speaking for all three Axos entities, or

14  that Mr. Garrabrants was directing activities in litigation

15  strategy in the Florida action and speculates that Mr.

16  Garrabrants is directing and funding Spartan's efforts, none

17  of that is supported by evidence.  If you look at his

18  declaration, none of that is in there and so really it boils

19  back down to the sole thing, the sole piece of evidence, is

20  that one verification which I think is not sufficient.

21         Compounding that is the fact that it's not a

22  business dispute.  And so in the absence of FINRA

23  arbitration, there is no independent agreement that Mr.

24  Reynolds has provided this Court, showing an agreement

25  between Mr. Reynolds, on one hand, and Mr. Garrabrants on

10

1 the other hand, to arbitrate.

2 　　　　And so without any agreement to arbitrate, it

3 would constitute irreparable harm, certainly, for a CEO of a

4 California company, California resident, who has no

5 agreement to arbitrate, to be forced to participate in an

6 arbitration, waive his right to a jury, and be hauled across

7 the country for a tort claim.  And Mr. Reynolds does not

8 really dispute or address the irreparable harm, balance of

9 equities in public interest, in his submission.

10 　　　　And so for all of those reasons, we believe FINRA

11 should be enjoined from continuing to allow these claims to

12 proceed against Mr. Garrabrants in FINRA.

13 　　　　And as far as the motion to dismiss.  I believe,

14 as your Honor indicated, that's not really before the Court.

15 But I'll be happy to address that if your Honor is inclined

16 to consider that request of release.

17 　　　　THE COURT:  We were first going to do the order on

18 whether it's subject to arbitration or not and then -- and

19 then if we were going to do the motion to dismiss, we would

20 do that later.

21 　　　　MS. MACARR:  Okay.  Thank you, your Honor.

22 　　　　THE COURT:  All right.  So about -- let me hear

23 from FINRA now on the definition of associated person in

24 1011(b).  Does it require each of the matters, one through

25 six, or one through seven, in order to be an associated

11

1  person?

2         MS. WERDERITCH:  Your Honor, FINRA filed on

3  October 2nd a document which attempted to clarify it's

4  position in this case, which is that we are not taking -- or

5  FINRA is not taking any position regarding the arbitrability

6  that's at issue here.  FINRA's position is the dispute is

7  between Mr. Reynolds and Mr. Garrabrants.  And so I'm making

8  the appearance on behalf of FINRA to sort of monitor the

9  proceeding, but we're going to abide by the Court's

10 determination of the arbitrability question and take no

11 position one way or the other.

12        THE COURT:  I understand that, but what is an

13 associated person?

14        MS. WERDERITCH:  Your Honor, I don't have the

15 rules in front of me, and I apologize.  I would have to

16 submit supplemental briefing on that motion.

17        THE COURT:  So it says,

18             "The term associated person means,

19             a natural person registered under FINRA

20             Rules, or a sole proprietor, or any

21             partner, officer, director, branch

22             manager of the applicant, or any person

23             occupying a similar status or performing

24             similar functions, any company,

25             government or political subdivision or

12

1         agency, or instrumentality of a

2         government, controlled by or controlling

3         the applicant.  Any employee of the

4         applicant, except any person whose

5         functions are solely clerical or

6         ministerial.  Any person directly or

7         indirectly controlling the applicant,

8         whether or not such person is registered

9         or exempt from registration under the

10        FINRA bylaws, or FINRA rules.  Any

11        person engaged in investment banking or

12        securities business controlled directly

13        or indirectly by the applicant, whether

14        such person is registered or exempt from

15        registration under the FINRA bylaws or

16        FINRA rules.  Or any person who will be

17        or is anticipated to be a person

18        described in one through six above."

19        If you meet -- so let me ask Garrabrants.  If you

20   meet any one of those items, are you an associated person?

21        MS. MACARR:  Your Honor, I believe you made

22   reference to Rule -- I didn't catch the rule number you were

23   referring to?

24        THE COURT:  1011(b) defines associated person.

25        MS. MACARR:  For purposes actually of FINRA's

13

1  mandatory arbitration provision, which is found in FINRA

2  Rule 13200, we believe that the associated person is defined

3  in paragraph U of Section -- FINRA Rule 13100 § U.  And so

4  that's actually, I believe, the controlling definition for

5  associated person and that's found in -- it's quoted

6  actually, in Mr. Garrabrants's complaint, which is docket

7  number one at paragraph 49.  And so that rule is a little

8  bit different.  I'm not sure where Mr. Reynolds got that

9  other FINRA rule, but the industry code -- you know, the one

10  applicable here, it's defined in 13100 § U.

11          THE COURT:  All right, thank you.

12          And now I'll -- we'll hear from Reynolds.

13          MR. FORD:  Thank you, your Honor.  This is Adam

14  Ford on behalf of Reynolds.

15          Okay, where to -- where to begin on this.  I

16  believe the facts here are really what's going to drive the

17  analysis for the preliminary injunction motion.  I agree

18  that this issue comes down to the question of whether

19  Garrabrants is an associated person.  And as we started to

20  -- in our brief, and we had the rule that your Honor just

21  cited to, which we do believe is the correct rule, and on --

22  under 1011(b) your Honor just referenced an individual

23  "...occupying a similar status, or performing a similar

24  function to a sole proprietor, partner, officer, director or

25  branch manager."  And then also, "An individual directly or

14

1  indirectly controlling the applicant." And we think that

2  it's an either/or task. I don't think you'd read the rule

3  and it makes any sense that there was a requirement that the

4  individual needs to satisfy all of the prongs. I think it's

5  a disjunctive test.

6         So if Garrabrants was in fact performing a similar

7  function of someone who had a high managerial level at Axos

8  Clearing, then that shows that he's a control person subject

9  to mandatory arbitration under FINRA rule 13200.

10        So with that being said, as we laid out in our

11 papers, and I'm frankly a little surprised to hear counsel

12 for Mr. Garrabrants say that the only piece of evidence that

13 we provided was the verification in which Mr. Garrabrants

14 states in no uncertain terms that as the CEO of Axos

15 Financial, he has the authority to control Axos Clearing,

16 because we actually submitted significant other evidence in

17 our papers, including a declaration from Scott Reynolds, in

18 which he sets forth all of the relevant facts, as well as a

19 declaration from myself, in which I attested to the veracity

20 of numerous documents, including emails and other documents

21 that Mr. Garrabrants sent to Mr. Reynolds and drafted in

22 connection with this dispute.

23        Now, your Honor picked up on another sort of

24 critical point, which is that the court in Florida, ruling

25 on the question of whether all of these claims were

15

1 arbitrable, and I mean by all of these claims, I mean the

2 claims emanating from all of the events that occurred

3 between these three parties -- or four parties -- Axos

4 Clearing, and actually I'm including Axos Financial and Axos

5 Bank, Spartan Securities, the broker dealer, my client,

6 Scott Reynolds, the trader, who was employed by Spartan

7 Securities and Mr. Garrabrants.  And what the court found,

8 what the facts are, is that there was a clearing arrangement

9 between Spartan Securities and Axos Clearing and that is

10 what permitted Spartan to place trades with Axos, right?

11 And it also provided that in the event there was a

12 deficiency in that account, because of -- from trading

13 losses, Spartan Securities would be responsible for those

14 losses.

15           In this case, where trades are replaced by various

16 employees of Spartan Securities, some of which were placed

17 by my client and that account was upside down leaving

18 Spartan Securities (indiscernible) Axos Clearing

19 (indiscernible).  After that happened, Mr. Garrabrants

20 called by client, identified himself as calling from Axos

21 Clearing and identified himself as the CEO of Axos

22 Financial, and that he was calling on behalf of Axos

23 Clearing, he then proceeded to engage in all sort of conduct

24 -- and I won't describe it here.  I put it in my papers, but

25 the point is, he clearly had complete and total control, and

16

1 certainly led my client to believe that he had complete and

2 total control over what was going on at Axos Clearing.

3         He then engages in a three-part conversation with

4 Mr. Reynolds, Spartan Securities, and himself purportedly on

5 behalf of Axos Clearing, Axos Financial and Axos Bank,

6 during which a global resolution is agreed to over the

7 phone.  After that, he sends my client a settlement

8 agreement, which in fact does not include the full terms of

9 the agreement that had just been reached.

10         Now, my client winds up signing that agreement,

11 under sort of various -- with the mistake in belief that the

12 document included the terms that were just described --

13 discussed, and under duress and other fraud that we

14 described in our papers, right?  And then the entire three-

15 part agreement blows up, because counsel for Spartan

16 Securities and Spartan Securities tells my client tells my

17 client not to agree to the settlement agreement, because it

18 doesn't include all of the terms that were agreed to, and

19 the whole thing blows up.  Now that -- and then shortly

20 thereafter, Axos Clearing goes to the Southern District of

21 Florida and files an ex-parte writ of attachment and

22 garnishment.

23         Now, the reason why I talk about all of these

24 facts, all of which are in evidence and have been submitted

25 in evidence under a signed declaration, and our evidence in

17

1  front of your Honor, for purposes of this motion, is that

2  once -- that is -- those are sort of -- that's the story,

3  right?  And that -- all of those -- and of the claims and

4  cross claims that are currently going on in FINRA, because

5  Spartan filed a complaint against Reynolds, Reynolds files a

6  complaint against Axos Clearing and Garrabrants and Axos

7  Clearing files a claim against (indiscernible).  All of the

8  claims emanate from the core set of facts that I just

9  described.

10        So when counsel for Ms. (Sic) -- for Mr.

11  Garrabrants just argued before that the dispute between Mr.

12  Reynolds and Mr. Garrabrants is not industry related, but is

13  some sort of tort -- personal tort claim that has nothing to

14  do with any associated member, it's simply -- it's simply

15  not an accurate statement, frankly.

16        In fact, all of the claims currently in

17  arbitration, are of course industry related.  They all stem

18  from trading losses that were sustained pursuant to a

19  clearing agreement in the attempt by the various parties to

20  settle the various -- the account deficiency with any other

21  -- any other claims.

22        So if we're -- and it's Craig (sic) Garrabrants

23  who is at the absolute center of all of this.  In fact, I

24  have no idea to this day, your Honor, and I've been

25  litigating this case frankly continuously since March, I

18

1  don't even know the name of anyone else at Axos Clearing who

2  could -- who was in charge.  I have never -- we engaged in

3  limited discovery in the federal court case before it was

4  dismissed, and there has been no evidence presented that

5  anyone, other than Greg Garrabrants, was the person

6  completely in control and in charge of Axos Clearing's

7  actions.  And that's of course consistent with why it was

8  Mr. Garrabrants that filed the verification in the Southern

9  District of Florida.

10         And I understand that counsel for Mr. Garrabrants

11 claims that that was sort of boiler plate and it just needed

12 to be someone that could -- well maybe that's right.  Maybe

13 it could have been anyone, but it wasn't.  It was in fact,

14 Mr. Garrabrants.  It was him saying -- you know, these words

15 are important -- saying, "As the Chief Executive Officer of

16 Axos Financial, I have the authority to do that."  That

17 language is completely consistent with the language that Mr.

18 Garrabrants used when he first called Mr. Reynolds on the

19 phone.  That's exactly what he said.  "I am the Chief

20 Financial -- or I'm sorry -- the Chief Executive Officer of

21 Axos Financial and I'm calling on behalf of COR Clearing to

22 get -- to figure out what to do about this account

23 deficiency."

24         So to the extent of -- this case hinges on the

25 question of whether Mr. Reynolds's claims against Mr.

19

1  Garrabrant's are sort of separate and apart from industry
2  related action, or separate and apart from the underlying
3  trades, that's just a completely inaccurate recitation and
4  I'm not even certain how you even make the suggestion that
5  Mr. Garrabrants's negotation of a settlement agreement and
6  then breach of that agreement -- and Spartan Securities
7  itself has taken the position -- although they've flip
8  flopped -- and it was Garrabrants that breaches the
9  settlement agreement.

10        And so the settlement agreement and the breach of
11  it, that's at the heart of these claims, and that it's Mr.
12  Garrabrants that makes the agreement and then breaks it
13  personally.  This is all the heart -- all the heart of the
14  claims.

15        So when you take all of that together, I think
16  it's clear that Mr. Garrabrants was in fact an associated
17  person.  He was in control of Axos Clearing and that
18  certainly, at the very least, the very least, it's a factual
19  dispute, but one that -- because we have sort of such a
20  paucity of evidence to suggest that he was separate from
21  Axos Clearing, or that the claims are not related to the --
22  are not industry related, I think that gets Mr. Reynolds --
23  certainly, you know, it weighs strongly in favor of your
24  Honor not granting the preliminary injunction to enjoin the
25  arbitration.

20

1        I will say, your Honor, this is actually

2   important.  Which is that, if we -- if your Honor decides

3   that a preliminary injunction is warranted while the parties

4   engage in discovery, or otherwise -- or otherwise engages in

5   motion practice, which would get to the personal

6   jurisdiction issue, we're putting that to the side.  If your

7   Honor believes that a preliminary injunction is warranted,

8   we would request that the injunction that's currently in

9   effect, which enjoins the arbitration in whole, that that

10  injunction simply remains in place.

11       Mr. Garrabrants has been -- or at least Axos

12  Clearing, who are represented by the same counsel, have been

13  arguing for a sort of narrower injunction, which would force

14  Mr. Reynolds to engage -- to take part in arbitration

15  against only Axos Clearing, without Mr. Garrabrants, as we

16  litigate this.  That would be extremely prejudicial to him

17  and essentially compel him to engage in the same arbitration

18  twice.

19       So if your Honor is inclined to keep the

20  preliminary injunction in place, we would request that it

21  was the -- that it's the same one that's in place now.

22       And with that, your Honor, I think that's all I

23  have on this piece.  And if your Honor has any questions,

24  I'm happy to answer them.  And I do -- I don't want to lose

25  sight of our arguments and our issue regarding the Court's

21

1  authority to issue relief against Mr. Reynolds without him

2  being a properly joined party or a -- or having personal

3  jurisdiction over him, as we've made those arguments and we

4  would stand by them.  But I won't go further into them,

5  unless your Honor has requested me to.

6          THE COURT:  All right.  Now I'll hear back in

7  reply from Mr. Garrabrants.

8          MS. MACARR:  Thank you, your Honor.

9          One thing I'd like to address is just this notion

10 that was (indiscernible) by counsel that (indiscernible)

11 that emanates any and all claims -- they emanate in any way

12 from this court that in fact automatically makes it subject

13 to arbitration.  That's just simply not the standing.

14         If there is no agreement to arbitrate that applies

15 to given claim and to a given individual, then it might be

16 more convenient or efficient to have them offered together,

17 that doesn't somehow trump an individual's right not to

18 (indiscernible) to jurisdiction without his consent.

19         And so all of this sort of background about the

20 claims between Axos Clearing, Spartan and Mr. Reynolds, you

21 know, doesn't really advance the ball, in terms of issues

22 we're here to discuss today, which is whether Mr.

23 Garrabrants is subject to (indiscernible) jurisdiction,

24 which goes back to the rule.

25         So Rule 1011 in the arbitrating code, it says,

22

1 "Unless otherwise provided, terms used in the Rule 1000

2 series shall have those definitions."  But here we're

3 dealing with the industry codes.  FINRA has a separate code

4 in the 13000 series that govern arbitration of industry

5 disputes with members and associate persons, and so the

6 definition provided in that section 13100 § U is the one

7 that governs.  And undeniably, Mr. Garrabrants does not fit

8 on the evidence before the Court and on this record into

9 either of those categories.

10            THE COURT:  Why do you -- why do you say he

11 doesn't fit?

12            MS. MACARR:  Well, your Honor --

13            THE COURT:

14                "An officer, director or branch

15            manager of a member, or other natural

16            person occupying a similar status, or

17            performing similar functions, or a

18            natural person engaged in the investment

19            banking or securities business who is

20            directly or indirectly controlling or

21            controlled by a member."

22 Is that a factual dispute?

23            MS. MACARR:  Your Honor, with the facts before the

24 Court, I mean that is the section that I'm referring to, and

25 so to answer your question, number one, if Mr. Garrabrants

23

1   is a "Sole proprietor, partner, officer, director or branch

2   manager of a member, or other natural person occupying a

3   similar status or performing similar functions."  There

4   simply is no evidence that Mr. Garrabrants is in anyway

5   acting as a partner, officer, director or branch manager by

6   virtue of having signed one verification saying, "I'm

7   authorized to make this verification as to the fact in that

8   (indiscernible)."

9           Mr. Ford mentioned that Mr. Garrabrants is at the

10  "absolute center" of the dispute.  That couldn't be farther

11  from the truth, as Mr. Reynolds's own complaint and

12  counterclaim show, and even his recitation of the statement

13  of facts in his renewed submission last week.  We did engage

14  in limited discovery in that case and not a single document

15  that has to do with this underlying trading dispute has Mr.

16  Garrabrants's name on it.  There's no evidence, there is no

17  facts, there is no anything showing that Mr. Garrabrants had

18  anything to do or even knew about Mr. Reynolds's trading

19  schemes that ended up costing Axos Clearing $15,000,000.

20  Mr. Garrabrants didn't sign the settlement agreement.  He

21  didn't have authority to bind Axos Clearing to the

22  settlement agreement, as he says in his declaration.

23          And so going back to (indiscernible) there's just

24  no showing that Mr. Garrabrants is performing a similar

25  function as an officer or director.  The only facts in

24

1  evidence before the Court right now is Mr. Garrabrants's

2  declaration saying that he does not hold any of those types

3  of positions or exert that type of control.

4        Going to the second prong of § 2, which your Honor

5  just read, "... or a natural person engaged in the

6  investment banking or securities business who is directly or

7  indirectly controlled (indiscernible)."  Again, Mr.

8  Garrabrants is not engaged in anyway in his individual

9  capacity in the investment banking or securities business,

10 and so it fails under that prong of the (indiscernible) as

11 well.

12       And in terms of Mr. Reynolds believed Garrabrants

13 was in charge of Axos Clearing.  Just looking at the rule,

14 it doesn't say (indiscernible) that you're a sole proprietor

15 and actual person occupying (indiscernible) qualifies you.

16 You have to in fact be occupying a similar position and

17 there simply is no evidence for that, nor can there be or

18 will there be.

19       And then, just for once I'd like to simply address

20 -- sorry, three points.  In terms of that settlement

21 agreement, just to clarify the record, the six-page document

22 settlement agreement describing that Spartan is somehow a

23 part of it, Spartan's name appears nowhere on the six-page

24 document, which Mr. Reynolds signed, following review by his

25 counsel  This six-page settlement agreement contains two

25

1  provisions confirming advice of counsel, even integration

2  clause and explicitly provides that there are no third-party

3  beneficiaries (indiscernible) and that the only

4  (indiscernible) are Axos Clearing, Mr. Reynolds and his

5  limited liability company.  That language appears

6  immediately before the signature block, which Mr. Reynolds

7  signed twice.  Trying to bring Spartan into the settlement

8  agreement is not supported.

9        Also, as Mr. Ford was concluding, he mentioned

10  that he would oppose the Court issuing any sort of order

11  against Mr. Reynolds.  That's not what we're seeking.  We're

12  -- the order that we're seeking (indiscernible) FINRA from

13  improperly exercising jurisdiction over Mr. Garrabrants and

14  this is why, precisely why Mr. Reynolds is a not a necessary

15  party here.  He has no right or interest in the matter.  If

16  he has claims against Mr. Garrabrants, he's free to bring

17  them in a jurisdiction in a court that has jurisdiction over

18  Mr. Garrabrants.

19        And then lastly, in terms of the sort of

20  (indiscernible) versus (indiscernible) in terms of

21  (indiscernible) the entire arbitration (indiscernible), as

22  to Mr. Garrabrants.  We would ask that it be limited to Mr.

23  Garrabrants so that the arbitration involving the three

24  parties who actually belong in arbitration, the FINRA

25  members, Spartan, Axos Clearing and Reynolds, can proceed.

26

1   Although they were not invited to submit briefing, non-
2   parties Axos Clearing and Spartan both, have voiced
3   objection outlying the prejudice that any further delay of
4   the FINRA arbitration is causing to them.  And it's a
5   separate issue involving only Mr. Garrabrants, certainly
6   should not prejudice all of these other parties from
7   pursuing their rights.
8           Thank you.
9           THE COURT:  Thank you.
10          Well I think the parties are in agreement that the
11  -- whether the matter is subject to arbitration is governed
12  by the FINRA rules.  The court will then submit.  And then
13  also Mr. Garrabrants makes additional arguments, one, that
14  he's not subject to jurisdiction, that it's contractual in
15  nature, and that the tort claim should not be subject to
16  arbitration.  There is already the federal court order,
17  ordering the matter to arbitration and this Court is not
18  going to upset that determination.
19          This court will submit the matter and review your
20  briefs and then issue a reasoned opinion.  Thank you very
21  much for the telephonic argument.  I think it helps to
22  clarify the issues.
23          MR. FORD:  Thank you, your Honor.
24          MS. MACARR:  Just to clarify.  I understand your
25  Honor is taking the matter under submission, is the stay

27

1  that this Court previously ordered, which applies my

2  (indiscernible) arbitration, to remain in place pending your

3  Honor's opinion?

4          THE COURT:  Yes.

5          MS. MACARR:  On the Garrabrants issue?

6          THE COURT:  Yes.  The stay will remain.

7          MS. MACARR:  Okay, thank you, your Honor.

8          THE COURT:  Thank you.

9          MR. FORD:  Thank you, your Honor.

10     (Proceedings concluded.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

28

1          I certify that the foregoing is a correct

2 transcript from the electronic sound recording of the

3 proceedings in the above-entitled matter.

4

5 /s/Tara Bauer                        11/15/19
Transcriber                          Date
6

7 FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

8

9 /s/L.L. Francisco
L.L. Francisco, President
10 Echo Reporting, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*